## JOHN T. COX V. CALVIN C. HUFFMAN.

No. A-7010. Decided December 31, 1958.
Rehearing overruled January 28, 1959.
(319 S.W. 2d Series 295)

*Edward O. Wiley, Jr.,* of San Marcos, for petitioner.

*Terry Jacks,* of San Marcos, *Robert C. Howell* and *Arthur* Mitchell, both of Austin, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

Respondent, Calvin C. Huffman, sued petitioner, John T. Cox, for a broker's commission of $5,000.00 on the sale of Cox's life insurance management contract to one McFaddin. The trial court on a jury verdict gave a take-nothing judgment. The Court of Civil Appeals has reversed and rendered judgment in favor of the respondent. 315 S.W. 2d 319. We think the trial court's judgment should be upheld.

The question here presented is not whether the broker earned a commission, but whether or not he was entitled to col-

lect a commission of $5,000.00 that he alleged Cox contracted to pay. The jury answered the submitted issues as follows: (1) that Huffman was the procuring cause of the sale; (2) that on the 31st day of October, 1956 Cox agreed to pay to Huffman as compensation all over $10,000.00 received by Cox for the sale; (3) that Cox received the sale price of $15,000.00; (4) that Cox placed the general manager's contract with Huffman for sale for a period of five days from October 31, 1956; (5) that Cox, by accepting the buyer procured by Huffman did not waive the five-day limitation. An issue as to whether or not Huffman was the procuring cause of said sale within the five-day period was predictated upon an affirmative answer to Issue No. 5. It therefore was not answered. Respondent raised no objection to any issue either as to form or substance.

Cox testified that he agreed for Huffman to retain as his commission all over the $10,000.00 consideration only if Huffman could make a sale of the contract within five days from October 31, 1956. He said that the reason for this was that he had some very pressing financial obligations he was anxious to discharge. Among these obligations was one to the bank for $4500.00 borrowed money secured by a pledge of the contract itself. The testimony of the petitioner is in part as follows:

"Q. Will you state again what did you inform Mr. Huffman as to the price you would sell this management contract for?

"A. If anyone would present me with a check for $10,000.00 cash, pay off the management, assume all the liabilities and management of the Company as of that date, that I would take $10,000.00 in cash net to me in the form of a cashier's check or $4500.00 in a cashier's check and a signed contract delivered into my hands prior to midnight of November 5.

\* \* \* \*

"Q. Was there any mention about a possibility of a sale after —

"A. Yes, sir, there was. Mr. Huffman asked me definitely: Now, listen, if I am going to develop somebody—you don't want to sell it unless you can sell it in five days — that is the way he put it back to me. I said, 'No, that isn't the story. That is the story on the 10 net. It must be within five days.'

"Q. Was there any mention of a sale after the five days you testified to?

"A. Yes, sir. Mr. Huffman asked me if he had not been able to place it within the five-day period it meant I was taking the Company off the market. I told him at that time it would be at least $15,000.00 because my worries, if I could bet by the 5th.

"Q. Did you definitely state that you would sell the contract for any sum of money after the 5th?

"A. I made a definite statement $15,000.00 with somebody else assuming all of the obligations. In other words, $15,000.00 was to be to me, money in cash or cashier's check."

■ While the jury did find in answer to Issue No. 2 that Cox had agreed to pay Huffman all over $10,000.00 received from the sale of the contract, that finding must be modified by the limitation of five days as found by the jury in its answer to No. 5.

Admittedly no contract of sale was entered into between Cox and the purchaser until some time in December of 1956 and no binding offer of purchase made by McFaddin until that time. Conceding that Huffman earned a commission on the sale of the management contract, it does not follow that he was entitled to the full $5,000.00 according to the contract as limited to the five-day period. To award him that recovery based on the answers to the first three issues would be to disregard wholly the findings of fact to Issues 4 and 5. The effect of those answers was to accept Cox's testimony that he offered to Huffman a commission of all over $10,000.00 if he sold the contract within five days and that Cox did not waive that limitation by accepting the offer made by Huffman's buyer some thirty days later.

■ Any apparent conflict in the jury's verdict should be reconciled if it can be done reasonably in the light of the pleadings, the evidence, the answers to other issues and the verdict as a whole. Southern Gas & Gasoline Engine Co. v. Richolson, (Com. App. 1919), 216 S.W. 158; Traders & General Insurance Co. v. Wilder, 186 S.W. 2d 1011, wr. er. ref.

Another rule may also be appropriately invoked here, namely, that where issues are incompletely stated a judgment based thereon in the absence of proper objection is as effective and controlling as if issues were properly drawn in the first place. Rule 274, T.R.C.P.; Frozen Foods Express v. Odom, 229 S.W. 2d 92, wr. er. ref.; Edwards v. Strong, 147 Texas 155, 213 S.W. 2d 979; Larson v. Ellison, 147 Texas 465, 217 S.W. 2d 416.

The Court of Civil Appeals observes that a sale of this kind would normally take more than five days to complete. Nevertheless it was not an impossible requirement and furthermore we do not understand that such limitation would necessarily require a consummated transaction, but rather within that period of time the acceptance of a binding offer in accordance with the terms of the listing contract would suffice.

We understand respondent's position to be that since he was the procuring cause of the sale and that Cox had recognized the obligation to pay a commission by sending Huffman a check for $344.00, he became entitled to the commission of $5,000.00 being all of the contract price over $10,000.00, irrespective of any time limit. In other words although Cox offered to pay this commission in the event of a sale within five days, one made a month later on these terms had the effect of removing the limitation of five days as to the agreed commission. That position is not tenable.

On the contrary Cox's testimony was to the effect that he was willing to pay a larger commission if the sale was made within five days. Surely it is not unreasonable to say that under some circumstances a seller would be willing to pay a larger commission if the sale be consummated quickly. So under the facts as found by the jury in this case we construe the obligation of petitioner to pay as a commission all over the $10,000.00 received as a consideration for the sale if made within five days and if made later then to pay a reasonable or customary commission for the services rendered. However, respondent elected to stand solely on the contract rather than on quantum meruit. He offered no proof nor requested any issues on the reasonable worth of his services and under those circumstances we think the trial court properly denied a recovery.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Associate Justice Greenhill not sitting.

Opinion delivered December 31, 1958.

Rehearing overruled January 28, 1959.